---------------------------------------------------------

ETHAN PRITCHARD.,

        Plaintiff,

    v.

FEDERAL EXPRESS COPORATION as
Successor in Interest to FEDEX GROUND
PACKAGE SYSTEM, INC.,

        Defendant.

---------------------------------------------------------

**Civil Action No.: 24 -457**

**COMPLAINT**

    Plaintiff Ethan Pritchard ("Plaintiff" or "Mr. Pritchard"), by and through his undersigned counsel, Eisenberg & Baum, LLP, states his Complaint against Defendant(s) Federal Express Corporation as Successor in Interest to FedEx Ground Package System, Inc. ("Defendant" or "FedEx") as follows based upon personal knowledge and belief:

### INTRODUCTION

1.    This lawsuit addresses the distressing mistreatment of Plaintiff, a Deaf individual who has been subjected to a denial of communication access, hostile work environment, and adverse employment action on the basis of his disability. Despite his contributions to Defendant FedEx, Plaintiff has suffered persistent discrimination that violates his rights under federal and state law. This action seeks redress for the Defendant's continuous failure to address, much less rectify, the troubling violations against Plaintiff at work, despite his appeals for intervention with management.

2.    Plaintiff brings this action to compel Defendant to cease unlawful discriminatory practices and implement policies and procedures that will ensure that deaf and hard-of-hearing

persons are free from discrimination and abuse. Plaintiff seeks declaratory, injunctive, and equitable relief; compensatory and punitive damages; attorneys' fees and costs; and all other available remedies to redress Defendant's unlawful disability discrimination in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111, et seq., Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; and the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103.

## PARTIES

3.      Plaintiff, Ethan Pritchard, is Deaf and communicates primarily in American Sign Language. He is substantially limited in the major life activities of hearing and speaking within the meaning of federal and state civil rights statutes. He is currently a resident of Kodak, TN. Defendant FedEx hired him on or around April 14, 2019, as a package handler and later promoted him to Quality Assurance.

4.      Defendant Federal Express Corporation as Successor in Interest to FedEx Ground Package System, Inc. is and was at all relevant times a Delaware corporation with its principal place of business at  610 HACKS CROSS RD MEMPHIS, TN 38125-8800 Defendant has a registered address for service at C T CORPORATION SYSTEM 300 MONTVUE RD KNOXVILLE, TN 37919-5546 USA.

5.      According to the Tennessee Secretary of State records, FedEx Ground Package System, Inc. merged into Federal Express Corporation on June 28, 2024.

6.      Upon information and belief, Defendant at all relevant times to this complaint has been a recipient of federal financial assistance, either directly or indirectly via "pass-through" funding grants from an intermediary or third party.

7. The Rehabilitation Act prohibits disability discrimination by "any program or activity receiving Federal financial assistance," 29 U.S.C. § 794(a), and defines "program or activity" as "all of the operations of . . . an entire corporation, partnership, or other private organization, or an entire sole proprietorship—if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole[.]" 29 U.S.C. § 794(b)(3)(A)(i). Thus, discrimination is prohibited in "all of the operations of an entire organization," if the organization receives federal financial assistance "as a whole." *Id.*

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction for the federal law claims under 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States. This Court also has supplemental jurisdiction for the state law claims under 28 U.S.C. § 1367 because those claims are substantially related to the federal law claims.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because, among other things, Defendant resides in this District, and the acts and omissions giving rise to this Complaint occurred in this District.

## STATEMENT OF FACTS

10. Mr. Pritchard is Deaf and relies primarily on American Sign Language (ASL) to communicate effectively with others..

11. ASL is a distinct language that differs from spoken and written English, making it essential for Mr. Pritchard to have ASL interpreters to fully participate in communication, especially in work-related settings.

12. Mr. Pritchard requires the assistance of a qualified ASL interpreter to fully engage in work-related meetings, trainings, and job-related interactions..

13.     An interpreter enables Mr. Pritchard to receive and convey information on par with his hearing colleagues, ensuring equitable access to workplace communication.

14.     Defendant hired Mr. Pritchard as a package handler on April 14, 2019, at its Kodak, Tennessee facility.

15.     Mr. Pritchard's duties as a package handler included sorting, scanning, and processing packages for distribution..

16.     Mr. Pritchard was capable of performing his job effectively with appropriate accommodations for his Deafness.

17.     In 2022, Defendant promoted Mr. Pritchard to a Quality Assurance role as FedEx Ground expanded operations and opened a new building.

18.     Mr. Pritchard's new role required monitoring, assessing, and ensuring safety and quality compliance within the facility.

19.     This position involved frequent participation in staff and safety meetings and required communication with his team and the safety committee.

20.     Mr. Pritchard promptly requested reasonable accommodations upon his promotion to fulfill his new duties.

21.     Specifically, Mr. Pritchard requested a qualified ASL interpreter for essential meetings, safety briefings, and interactions with his team and safety committee.

22.     The requested accommodation was necessary for Mr. Pritchard to understand safety protocols, quality standards, and other essential job information.

23. Despite Mr. Pritchard's requests, Defendant failed to provide a live ASL interpreter or Video Remote Interpreting (VRI) services for these meetings.

24. Defendant occasionally provided written safety documents as a substitute for interpreter services.

25. Written safety documents alone were insufficient and failed to provide Mr. Pritchard real-time engagement during meetings and discussions.

26. Mr. Pritchard's communication needs were not adequately met by the limited accommodations Defendant provided.

27. Mr. Pritchard started to advocate for himself and other Deaf employees for equal access to the workplace.

28. Approximately five other Deaf employees at the facility also experienced similar denials of interpreter services or VRI access.

29. Defendant's denial of communication accommodations for Deaf employees was indicative of a broader pattern of discrimination.

30. During Mr. Pritchard's employment, Managers Andrew and Kevin created a hostile work environment targeting his Deafness.

31. Managers Andrew and Kevin engaged in discriminatory actions by learning inappropriate ASL signs to ridicule Mr. Pritchard.

32. Manager Andrew further mocked Mr. Pritchard by using a megaphone near him to test his hearing ability in a taunting manner, by saying words like " You're fired" and "Get out of the Office Area".

33.     When Mr. Pritchard reported feeling vibrations in his ears, Andrew and Kevin laughed, showing disregard for his Deafness.

34.     Andrew and Kevin also repeatedly said "you are fired" to Mr. Pritchard in a derisive tone, attempting to intimidate him.

35.     Following his promotion, Mr. Pritchard requested a videophone to enable him to communicate effectively with customers.

36.     A videophone would allow Mr. Pritchard to use ASL to communicate directly with ASL users or through interpreters for customer inquiries.

37.     Defendant delayed the provision of a videophone for nine months after Mr. Pritchard's request.

38.     Eventually, Defendant provided an iPhone with poor reception as a substitute for a videophone.

39.     The iPhone only worked in a limited corner of the warehouse and was inadequate for reliable communication to communicate effectively.

40.     Mr. Pritchard suggested using Video Remote Interpreting (VRI) as an alternative accommodation to facilitate communication.

41.     Managers responded to Mr. Pritchard's suggestion by stating they did not know how to implement VRI services.

42.     Rather than providing a qualified ASL interpreter, Defendant assigned a colleague, Brandy Butter, to act as Mr. Pritchard's interpreter.

43.     Ms. Butter had limited ASL skills and no interpreter certification, rendering her ineffective in providing meaningful interpretation.

44.     Ms. Butter's limited signing ability prevented Mr. Pritchard from accessing essential workplace information.

45.     The lack of qualified interpretation left Mr. Pritchard without effective communication during meetings and discussions.

46.     In February 2023, an internal email stated that all team members were required to learn all duties within the team.

47.     Despite this directive, Manager Kevin refused to assign Mr. Pritchard certain responsibilities, such as linehaul and PD report positions

48.     Mr. Pritchard raised concerns about discrimination, but Kevin denied any discriminatory treatment.

49.     Instead of addressing the discrimination concerns, Kevin threatened Mr. Pritchard with disciplinary action through the company's Big app.

50.     On April 26, 2023, Manager Andrew assigned Mr. Pritchard physically demanding tasks outside his normal responsibilities.

51.     These tasks included handling four fully loaded carts of packages, each weighing over 50 pounds.

52.     According to company policy, such tasks required assistance from at least two team members.

53.    Mr. Pritchard requested assistance with these strenuous tasks, but Manager Andrew laughed and refused to help.

54.    Mr. Pritchard was forced to carry out the physically demanding tasks alone, risking physical strain and injury.

55.    Mr. Pritchard's managers continued to assign Mr. Pritchard physically demanding tasks outside his normal responsibilities.

56.    On May 4, 2023, managers were observed openly mocking and laughing at Mr. Pritchard as he struggled with heavy packages.

57.    On May 5, 2023, Manager Andrew once again assigned Mr. Pritchard heavy lifting tasks without any support.

58.    Managers Andrew and Kevin frequently used profanity when addressing Mr. Pritchard, especially when he would complain of discrimination or speak up regarding a hostile work environment.

59.    Mr. Pritchard expressed frustration that he was repeatedly assigned strenuous work without support as required by company policy.

60.    Mr. Pritchard felt targeted and discriminated against by the managers due to his Deafness.

61.    In response to Mr. Pritchard's continued advocacy for reasonable accommodations, Managers Andrew and Kevin created a hostile work environment and engaged in retaliatory actions.

62.     Their conduct included mocking Mr. Pritchard's Deafness, assigning him physically demanding tasks outside his regular duties without support, and threatening disciplinary action to deter him from further advocating for his rights.

63.     On May 8, 2023, Manager Kevin contacted Mr. Pritchard via VideoPhone to terminate his employment.

64.     Mr. Pritchard was falsely accused of misconduct and falsely claimed that he was the one who created a hostile environment.

65.     These accusations were unfounded and appeared retaliatory, given Mr. Pritchard's insistence on reasonable accommodations and equal access.

66.     Prior to his termination, Mr. Pritchard had never been counseled, disciplined, warned, or informed of any alleged deficiencies in his performance

67.     The only issues raised by management to Plaintiff pertained to Mr. Pritchard's repeated requests for reasonable accommodations and his advocacy against retaliation and a hostile work environment.

68.     Upon information and belief, Defendant fabricated a disciplinary record to justify Mr. Pritchard's termination.

69.     Upon information and belief, Defendant falsely claimed to have provided Mr. Pritchard with Video Remote Interpreters.

70.     Defendant never implemented or provided VRI services, despite claiming to have done so.

**CONDITION PRECEDENT**

1.      Pursuant to the requirements of 42 U.S.C. § 2000e-5, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Nashville Area Office, on or about November 6, 2023.

2.      The EEOC issued a Notice of Right to Sue on August 14, 2024.

3.      This Complaint is timely in that it was filed within ninety (90) days of the issuance of the Notice of the Right to Sue.

4.      Therefore, Plaintiff has satisfied any and all conditions precedent to the filing of his Complaint.

**CAUSES OF ACTION**

**CLAIM I: Violations of Title I of the Americans with Disabilities Act**

5.      Mr. Pritchard incorporates by reference all preceding paragraphs and realleges them in support of this claim.

6.      At all times relevant to this action, Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, has been in full force and effect and has applied to Defendant's conduct.

7.      At all times relevant to this action, Mr. Pritchard has been substantially limited in the major life activities of hearing and speaking. Therefore, Mr. Pritchard has a disability within the meaning of the ADA. 42 U.S.C. § 12102(2).

8.      Mr. Pritchard is an employee within the meaning of Title I of the ADA. 42 U.S.C. § 12111(4).

9. Defendant is an employer within the meaning of Title I of the ADA. 42 U.S.C. § 12111(5).

10.     Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

10

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

11.     Title I of the ADA defines discrimination to include "limiting, segregating, or classifying a . . . employee in a way that adversely affects the opportunities or status of such . . . employee because of the disability of such . . . employee." 42 U.S.C. § 12112(b)(1).

12.     Title I of the ADA defines discrimination to include "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

13.     Title I of the ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

14.     The ADA also prohibits retaliation  and states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a).

15.     As discussed above, Plaintiff was retaliated against for advocating for equal access as protected by the ADA.

16.     Defendant discriminated against Mr. Pritchard on the basis of his disability in violation of Title I of the ADA and its implementing regulations by failing to provide appropriate communication access at work.

17.     Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with Title I of the ADA and its implementing regulations.

18.     Mr. Pritchard is entitled to damages and an award of attorney's fees, costs, and disbursements under the ADA. 42 U.S.C. § 12188(a)(1)–(2); 42 U.S.C. § 2000a-3.

## CLAIM II: Violations of Section 504 of the Rehabilitation Act

19.     Mr. Pritchard incorporates by reference all preceding paragraphs and realleges them in support of this claim.

20.     At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

21.     At all times relevant to this action, Mr. Pritchard has had substantial limitations to the major life activities of hearing and speaking. Thus, he has been an individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(9); 42 U.S.C. § 12102(2).

22.     At all times relevant to this action, Defendant has been a program or activity receiving federal financial assistance under 29 U.S.C. § 794(b).

23.     Section 504 of the Rehabilitation Act provides that no "otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

24.     Under the Rehabilitation Act, federal regulations prohibit recipients of federal funds from "deny[ing] any employment opportunity to a qualified handicapped employee or applicant if the basis for the denial is the need to make reasonable accommodation to the physical or mental limitations of the employee or applicant." 45 C.F.R. § 84.12(d). This regulation authoritatively construes the Rehabilitation Act and was violated by Defendant.

25.     Further, recipients of federal funding must "make all decisions concerning employment . . . in a manner which ensures that discrimination on the basis of handicap does not occur and may not limit, segregate, or classify applicants or employees in any way that adversely affects their opportunities or status because of handicap." 45 C.F.R. § 84.11(a)(3). This provision applies to "any other term, condition, or privilege of employment." *Id.* § 84.11(b)(1)-(9).

26.     Under the Rehabilitation Act, recipients of federal funding "shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee," including "the provision of . . . interpreters." 45 C.F.R. § 84.12(a)-(b).

27.     Under the Rehabilitation Act, federal regulations prohibit recipients of federal funds from "otherwise limiting a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service." 45 C.F.R. § 84.4 (b)(1)(vii). This regulation authoritatively construes the Rehabilitation Act and was violated by Defendant.

28.     Under the Rehabilitation Act, federal regulations prohibit recipients of federal funds from "[a]fford[ing] a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered nonhandicapped persons." 45 C.F.R. § 84.52(a)(2). This regulation authoritatively construes the Rehabilitation Act and was violated by Defendant.

29.     The anti-retaliation provision of the Americans with Disabilities Act of 1990 also applies to actions under Section 504 of the Rehabilitation Act by virtue of 29 USCS § 791(g).

30.     Defendant discriminated against Mr. Pritchard solely on the basis of his disability by denying him meaningful access to the services, programs, and benefits FedEx offers to other individuals and by refusing to provide auxiliary aids and services necessary to ensure full

inclusion in violation of Section 504 of the Rehabilitation Act.

31. FedEx has failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Rehabilitation Act and its implementing regulations.

32. Mr. Pritchard is entitled to injunctive relief; attorney's fees, costs, and disbursements; and compensatory damages for the injuries and loss he sustained as a result of FedEx's discriminatory conduct and deliberate indifference under 29 U.S.C. § 794a.

33. The Rehabilitation Act explicitly authorizes the remedies available under 42 U.S.C. § 1981a. Specifically, 29 U.S.C. § 794a(a)(2) provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

34. Accordingly, 29 U.S.C. § 794a(a)(2) provides that anyone bringing claims of discrimination against a recipient of federal funding may avail themselves of the remedies in 42 U.S.C. § 2000e-5(e)(3), which in turn states: "*In addition to* any relief authorized by section 1981a of this title . . . an aggrieved person may obtain [other] relief . . . ." 42 U.S.C. § 2000e-5(e)(3)(B) (emphasis added). And 42 U.S.C. § 1981a(b)(3) expressly permits compensatory damages for "emotional pain" and "mental anguish."

35. As such, "*any person* aggrieved by *any act or failure to act by any recipient of Federal Assistance . . . under section 794*" is entitled to the "*remedies*, procedures, and rights" not only in "title VI of the Civil Rights Act of 1964," but also in "subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5)." 29 U.S.C. § 794a(a)(2) (emphasis added).

36.     42 U.S.C. § 2000e-5(e)(3), in turn, authorizes certain relief "[i]n addition to any relief authorized by section 1981a," and 42 U.S.C. § 1981a(b)(3) expressly permits compensatory damages for "emotional pain" and "mental anguish."

## CLAIM III: Violations of the Tennessee Disability Act

37.     Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

38.     At all times relevant to this action, the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103, has been in full force and effect and has applied to Defendant's conduct.

39.     Plaintiff is an individual with a disability as defined by the TDA, and at all relevant times, was qualified to perform the essential functions of his job. Tenn. Code Ann. § 85-50-103.

40.     The TDA prohibits employers from discriminating against employees.

41.     Defendant discriminated against Plaintiff on the basis of his disability by failing to provide Plaintiff with reasonable accommodations, as requested by Plaintiff, and terminating Plaintiff for reasons motivated by his disability in violation of the TDA.

42.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer economic losses, emotional distress, and other damages.

43.     Plaintiff is therefore entitled to injunctive relief, reinstatement to Plaintiff's former position, back pay for lost wages and benefits, and reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ethan Pritchard respectfully requests that this Court:

A.     Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title I of the ADA, RA and TDA.

B.    Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that discriminates against deaf and hard-of-hearing individuals;

C.    Order Defendant:

i.    Develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals in all aspects of employment;

ii.    Develop, implement, promulgate, and comply with a policy to ensure that Defendant will inform deaf or hard of hearing employees and job applicants of their right to effective auxiliary aids and services, including qualified ASL interpreters;

iii.    Develop, implement, promulgate, and comply with a policy to ensure that Defendant will promptly provide deaf or hard of hearing individuals with reasonable accommodations, including:

   a.    Qualified ASL interpreters for work-related meetings, trainings, and administrative proceedings;

   b.    Appropriate visual alerts for audible workplace signals;

   c.    Suitable communication devices for day-to-day workplace interactions;

iv.    Establish a clear process for requesting and providing accommodations, with designated personnel responsible for managing accommodation requests;

v.    Develop and implement a training program for all employees, staff, and other agents about:

a.  The rights of individuals who are deaf or hard of hearing under the ADA and TDA;

b.  Proper procedures for working with ASL interpreters and other accommodations;

c.  Effective communication strategies for interacting with deaf or hard of hearing colleagues;

vi. Conduct this training annually and for all new hires.

D.  Award to Plaintiff:

i.  Compensatory damages pursuant to the ADA, RA, TDA;

ii.  Nominal Damages pursuant to the ADA, RA, TDA

iii.  Punitive damages pursuant to the ADA;

iv.  Reasonable costs and attorneys' fees pursuant to the ADA, RA and TDA;

v.  Back pay for the period since Mr. Pritchard's wrongful termination pursuant to the ADA, RA, TDA;

vi.  Rehiring of Plaintiff by Defendant pursuant to the ADA, RA, TDA;

vii.  Interest on all amounts at the highest rates and from the earliest dates allowed by law;

viii.  Any and all other relief that this Court finds necessary and appropriate.

Dated: November 12, 2024                    Respectfully submitted,

Andrew Rozynski, Esq. (NY# 5054465)
arozynski@eandblaw.com
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)

17

212-353-1708 (fax)
Attorneys for Plaintiff